# EXHIBIT 1

131 South Dearborn Street

Suite 2400

Chicago, Illinois 60603

(312) 460-5000

fax (312) 460-7000

www.seyfarth.com

(312) 460-5896

jross@seyfarth.com

October 23, 2009

| **VIA E-MAIL AND U.S. MAIL** | **VIA E-MAIL AND U.S. MAIL** |
|---|---|
| Terrence Buehler<br>Jeffrey J. Halldin<br>TOUHY, TOUHY, BUEHLER & WILLIAMS, LLP<br>55 West Wacker Drive<br>14th Floor<br>Chicago, Illinois 60601 | Suzanne Tongring<br>244 Madison Avenue No. 3740<br>New York NY 10016 |

    Re:    **FRE 408 Settlement Offer**
              **Harris v. Seyfarth Shaw LLP**
              **Case No. 09-CV-3795**

Dear Counsel,

      We have advised you from the beginning of this case that our goal is to resolve it as fairly and expeditiously as possible. This is our settlement offer to do so.

      1.     June 23, 2006 is three years before the captioned complaint was filed. This is the longest damages period available under either the FLSA or the Illinois Minimum Wage Law.

      2.     Since June 23, 2006, Seyfarth has employed nationwide only five affirmative action analysts (including Harris); two affirmative action advisors; and three affirmative action senior advisors. All of these positions have been classified as exempt.

      3.     As we have previously explained, Seyfarth classifies its paralegals as non-exempt and pays them on an hourly basis, including time and a half for overtime.

      4.     For purposes of this settlement proposal, we will accept Harris' allegations that she and the other four analysts are misclassified as exempt because they primarily perform data entry tasks.

      5.     The two advisors, by contrast, manage clients and affirmative action projects; provide counseling and training to clients on affirmative action issues; discuss potential affirmative

Terrence Buehler<br>
Suzanne Tongring<br>
October 23, 2009<br>
Page 2

action plan issues with clients; develop goals with clients to deal with any adverse impact identified in the plans; take responsibility for signing off on each affirmative action plan; and counsel clients through OFCCP audits. In addition, the advisors also manage the affirmative action department on a day to day basis, including conducting hiring interviews and making hiring recommendations for new analysts, and providing performance reviews for analysts and support staff in the department.

6. The three senior advisors include a former OFCCP regional director and an MBA degreed advisor. In addition to the duties performed by the two advisors, the three senior advisors also are responsible for marketing Seyfarth's Affirmative Action department, pitching new business, and handling the most complex affirmative action matters, such as on-site OFCCP audits. Your client will tell you that she does not perform any of the these duties.

7. Harris and the other four analysts were required to record their billable and nonbillable hours worked because their billable time was charged to clients. We have previously produced Harris' actual time records for the three year period of time prior to the filing of the captioned complaint.

8. Attached is a summary of Harris' recorded hours and a calculation of her overtime damages, which we prepared for this settlement. The calculation method we followed is prescribed by established United States Department of Labor precedent as follows:

- Annual salary divided by 52 weeks = weekly salary

- Weekly salary divided by total hours worked each week = weekly hourly rate

- Weekly hourly rate x 0.5 x number of overtime hours worked = weekly unpaid overtime

See January 14, 2009 Department of Labor Opinion Letter FLSA2009-3; *see also Perez v. RadioShack Corp.*, 2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005) (applying same formula); *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283 (N.D. Ill. 1995) (same).

9. We will pay Harris all her overtime damages and an equal amount for liquidated damages for the three year time period. This is the maximum amount to which she would be entitled under both the FLSA and the Illinois Minimum Wage Law.

10. We will stipulate to sending a mutually agreed upon notice to each of the other four analysts and the two advisors. For any other individual who opts in, we will provide the same type of settlement as we have for Harris, and we will provide you with the same type of time records, summary and overtime calculation.

11. We will convert the analyst position to non-exempt, effective on the settlement date. We believe the advisor position is properly classified as exempt.

12. We will pay Plaintiff's reasonable attorneys fees to date.

Terrence Buehler<br>
Suzanne Tongring<br>
October 23, 2009<br>
Page 3

We are willing to provide you with confirmation of any of the facts described in this letter.

Please contact us at your earliest convenience.

    Very truly yours,

    SEYFARTH SHAW LLP

    Jeffrey K. Ross

JKR/vd

CH1 11828024.1