IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LYNNE HARRIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 09 C 3795 |
| vs. | ) ) ) | Judge Elaine E. Bucklo<br>Magistrate Judge Maria Valdez |
| SEYFARTH SHAW LLP, | ) ) | |
| Defendant. | ) | |

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND
TO ORDER DEFENDANT TO CEASE ALL RETALIATION AGAINST PLAINTIFF

NOW COMES the Plaintiff Lynne Harris, by and through her attorneys and moves this Court to enforce the Settlement Agreement, to order Defendant to cease all retaliation against Plaintiff and such further relief stated in this motion. In support, Plaintiff states as follows:

1. The Settlement Agreement provides for payments to be made to the Seyfarth Shaw LLP 401(k) Savings and Retirement Plan ("401(k) Plan") so that Plaintiffs can be made whole. Not only were Plaintiffs underpaid, but the underpayment resulted in a lower contribution to the 401(k) Plan (Exhibit 1, p. 2):

> Seyfarth also agrees to pay each Opt-In Class Member an amount equal to 7.5% of his or her unpaid overtime which reflects the amount Seyfarth would have contributed to the Opt-In Class Member's 401k plan. Seyfarth also agrees to pay each Opt-In Class Member an amount equal to any lost percent of income contribution the Opt-In Class Member would have otherwise made to his or her 401k plan, as well as an amount equal to the lost value of that investment, all of which will be deposited in the Opt-In Class Member's Seyfarth Shaw retirement plan. Only the lost percent of income contribution will be treated as pre-tax wages. To determine the lost value of any investment, Seyfarth will retain the services of its 401k plan provider, Charles Schwab, unless the parties can otherwise reach an agreement.

2. Under the terms of the 401(k) Plan attached hereto as Exhibits 2 and 3, there are two separate requirements, one for participating in the 401(k) Plan and commencing 401(k) contributions (called 401(k) elective deferrals) and one for receiving a contribution made by

Defendant for non-legal employees. An employee becomes a participant in the 401(k) Plan on the first day of the month following completion of one month of employment and attainment of age 21. At that point, an employee becomes eligible to make 401(k) contributions. (Exhibit 3, Sections 2.20 and 3.1(a), pp. 5 and 11). Defendant is also required to make contributions for its non legal staff if they are employed at the end of Defendant's fiscal year (July 31) and completed 1,000 Hours of Service. (*Id*., Section 5.1, p. 17). Therefore, someone like Opt-In Class Member Christina Griffith did in fact participate in the 401(k) Plan while she was employed by Defendant. She was employed by Defendant from September 2006 to May 2007 and while employed she was over 21 years of age. The applicable percentage she elected to contribute to the 401(k) Plan should apply to her overtime compensation she received under the Settlement Agreement. She is not eligible for the firm contribution for nonlegal employees for the July 31, 2007 fiscal year end because she was not employed on July 31, 2007 even though she completed 1,000 Hours of Service. After she left the Firm, she rolled over her money in the 401(k) Plan into an Individual Retirement Account ("IRA"). She intends to roll over the amounts Defendant is required to deposit to the 401(k) Plan into the same IRA.

All of the other Opt-In Plaintiffs are current employees. They are each entitled to the percent of income contributions based on his/her election in effect for the period in which the overtime was earned plus interest through the current date. They are also entitled to the employer contribution plus interest through the current date.

3. Plaintiffs' counsels have attempted to obtain confirmation that the contributions to the 401(k) Plan have been made. (Exhibit 4). Plaintiff Harris has confirmed with the 401k plan provider, Charles Schwab, that Defendant had not made the contributions.

4. As part of the settlement Defendant was to provide Plaintiffs with an Affidavit by someone with authority employed by Defendant relating to statements that were provided to

Plaintiffs' counsel as part of the settlement. Defendant, for example, advised during the settlement negotiations that there were no current or former employees who were categorized as paralegals who were also classified as exempt from overtime. Defendant employs a number of paralegals. As the Opt-In Plaintiffs and the current and former employees involved in the settlement who were given opt-in notices who did not opt into the settlement were categorized by Defendant as paralegals and were classified as exempt from overtime during the three year period prior to the filing of the complaint, this Affidavit was an important part of the settlement. (Exhibit 5).

   5. On February 15, 2011, part of Plaintiff's motion recounted instances of harassment and retaliation relating to Plaintiff's employment. (Dkt. 64). Plaintiff was overpaid by a mistake made by an employee in the Human Resources Department of Defendant through no fault of Plaintiff. (*Id.*). Defendant tried to recoup the amount from Plaintiff's accrued vacation pay from her vacation bank of days she had accumulated which would have prevented her from using those days under the Family Medical and Leave Act or for vacation like any other employee. (*Id.*).

  Plaintiff, who has lupus, has a *per se* disability under the Americans With Disabilities Act and her treating physician substantiated Plaintiff's request for intermittent leave as an accommodation. (*Id.*). For example, on the day of the fairness hearing, Plaintiff returned to the office and was advised by an employee in Defendant's Human Resources group that she was told to keep a close eye on Plaintiff. Another example of adverse action taken during the pendency of this lawsuit is a final warning Plaintiff received. Although she timely advised Defendant she had to go into the hospital because of complications related to her disease, she was hospitalized for an additional week in the intensive care unit (cardiac) and did not notify Defendant from intensive care that she was still in the hospital because she was not able to. (Exhibit 6). Even

after providing this explanation and the seriousness of the hospitalization which Defendant could have easily verified because it has all of the records, Plaintiff was put on a final warning. As soon as Plaintiff signed the Settlement Agreement, Defendant took further adverse employment actions against her, including the imposition of employment requirements that are not demanded of other similarly situated employees and subjected her to scrutiny about the number of days that she took under the Family and Medical Leave Act although her treating physician had requested intermittent leave as an accommodation. (Exhibit 7).

Defendant has employed plaintiff for almost 10 years. Exhibit 7 recounts some of the adverse action. Plaintiff states that adverse action escalated when she filed her FLSA lawsuit.

WHEREFORE, Plaintiff respectfully asks for the entry of an order-directing Defendant to:

1. Comply with the settlement and contribute the amounts to the 401(k) Plan that are required by it and interest through the current date.

2. Provide an Affidavit stating that Defendant did not designate any current and former employee as a paralegal as exempt during the three year period prior to the filing of Plaintiff's complaint.

3. Reverse any adverse employment action it has taken against Plaintiff of any kind or nature during the pendency of this lawsuit and to desist from retaliation in the future.

4. Pay Plaintiffs' counsel for their attorneys' fees and costs for bringing this motion.

5. Enter such other and further relief as the Court deems necessary.

        Respectfully Submitted,
        LYNNE HARRIS, individually and on behalf of all others similarly situated, Plaintiff


        By: /s/ Suzanne Tongring
            One of Her Attorneys

4

Suzanne Tongring
244 Madison Avenue, No. 3740
New York, New York 10016
(347) 482-1955

Terrence Buehler
TOUHY, TOUHY & BUEHLER, LLP
55 West Wacker Drive, 14th Floor
Chicago, Illinois 60601
(312) 372-2209

## SERVICE OF DOCUMENTS BY ELECTRONIC MEANS

The undersigned hereby certifies that June 13, 2011, she caused the foregoing document to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using its Electronic Case Filing System which will send a Notice of Electronic Filing to the following Filing Users:

**Terrence Buehler**         tbuehler@touhylaw.com

**Jeffrey Kenneth Ross**     jross@seyfarth.com

**Rebecca Pratt Bromet**     rbromet@seyfarth.com

The undersigned also certifies that on the above date he caused the foregoing document to be mailed by United States Postal Service to the following non-Filing Users:

(Not Applicable)

/s/     Suzanne Tongring

Suzanne Tongring
244 Madison Avenue, No. 3740
New York, New York 10016
(347) 482-1955